## HEBBLETHWAITE v. FLINT et al.

(Supreme Court, Appellate Division, Second Department.   November 16, 1906.)

1. PARTNERSHIP—ACCOUNTING—VALUE OF PROPERTY—PRESUMPTIONS.

In an action by a partner for an accounting, the referee found that certain bonds in the hands of the defendant, and in which plaintiff had an interest, were not readily salable, and it appeared that sales had been made for a portion at their par value. *Held*, that a finding unsupported by other evidence that their actual value was their par value could not be upheld under the rule applicable to cases in conversion.

2. EVIDENCE—JUDICIAL NOTICE—FOREIGN STATES—SOLVENCY.

The court cannot take judicial notice of the solvency of a foreign state, or the value of its obligations, so as to support a finding that the actual value of certain foreign bonds was their par value.

3. PARTNERSHIP—ACCOUNTING—PROPERTY PAID OUT BY PARTNER—VALUE.

In an action by a partner for an accounting, defendant claimed a credit for certain foreign currency bonds delivered by him as an expense in the joint enterprise. The currency bonds were of no value except as transferable at a discount for gold bonds, some of which defendant held under the enterprise. *Held* that, though delivery of the currency bonds was not a proper credit as against plaintiff, defendant's account should not be surcharged with their face value, but the exchangeable equivalent in gold bonds should be added to the account of the gold bonds held by him.

4. SAME—CONTRACT FOR DIVISION OF PROFITS—REIMBURSEMENT FOR EXPENSES.

By a partnership agreement, one of the partners was to finance the venture, while the other was to receive one-half the net profits. Under the contract, the financing partner paid out certain sums and held certain bonds. *Held*, that the other partner was not entitled to one-half the bonds on payment of one-half the expense incurred, but all such expense was payable from the proceeds of the bonds before he was entitled to anything.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, § 135.]

5. PLEDGE—TRANSFER OF PLEDGED PROPERTY—CONVERSION.

Where pledged property was sold on foreclosure and at the sale bought by the pledgee under circumstances rendering the sale voidable, and afterwards without the pledgor's knowledge transferred for other property at a fair price, there was no conversion of either the pledged stock or the other property, but the pledgor's rights remained in the new property as in the property pledged.

6. JUDGMENT—CONFORMITY TO PLEADING—REMEDY ASKED.

A complaint alleged a tender of payment of a debt for which railroad stock had been pledged, a demand for the stock's return, and asked for a recovery of the stock or an accounting, on the ground that its value was so difficult of ascertainment as to render an action for damages impracticable. On the trial it appeared that the stock after a voidable foreclosure sale to defendant had been transferred for certain bonds. *Held*, that a money judgment on failure to deliver the stock could not be sustained, since a conversion was not pleaded of either the stock or the bonds.

7. PLEDGE—EXCHANGE OF PROPERTY—ACTION FOR RECOVERY—PROPER REMEDY.

A pledgee, after a voidable sale to himself under foreclosure, without the pledgor's knowledge, exchanged the property for other property worth as much. After tender of the debt and demand for the pledged property, the pledgor brought action to recover such property or for an accounting. *Held*, that the pledgee should be required to deliver the property received for the pledged property.

8. SAME—MONEY JUDGMENT—AMOUNT.

Even though plaintiff was entitled to a money judgment on failure of defendant to deliver the property, it would be for the actual value of the property received in exchange, and not for its par value.

9. APPEAL—REVERSAL—NECESSITY OF NEW TRIAL.

Where, in an action by a partner for an accounting, it appears that plaintiff is entitled to one-half the proceeds of certain property of an undetermined value held by defendant, only after deducting expenses incurred by defendant, an erroneous money judgment for plaintiff for one-half the face value of such property, on payment of one-half the expenses incurred, cannot be corrected on appeal, and the case must be reversed for new trial.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4597–4599.]

Appeal from Special Term, Kings County.

Action by Frank H. Hebblethwaite against Charles R. Flint and another. From a judgment in favor of plaintiff, defendants appeal. Reversed, and new trial granted.

See 82 N. Y. Supp. 471.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, RICH, and MILLER, JJ.

William N. Dykman and Edward M. Shepard (Patrick H. Loftus · and Frederick Stewart, on the brief), for appellants.

Howard R. Bayne, for respondent.

RICH, J. This is an appeal from a judgment entered upon a decision of the court after trial at Special Term. The appellants also bring up for review the interlocutory judgment, entered on March 30, 1903, and an order overruling their exceptions to the referee's report and denying their motion to correct and resettle the findings of fact relative to the first cause of action alleged, so as to make them conform to the testimony taken before the referee, etc. The complaint contains two causes of action: The first, for an accounting of defendants' receipts and disbursements in carrying out a contract for paving, which plaintiff had obtained from the state of Amazonas in the Republic of Brazil, under an agreement with the defendants by which they were to perform the contract and pay the plaintiff one-half of the profits thereof; and, the second, to recover 1,609 shares of the capital stock of the Manaos Railway Company, in said republic, owned by the plaintiff, and pledged to defendants to secure an indebtedness amounting at the time of a tender to defendants of such indebtedness to about $12,140, together with the increase and earnings of said stock, or, in the event of defendants' inability to deliver said stock, for an accounting of its value.

The answer put in issue practically all of the facts alleged in the first cause of action, with a counterclaim of $50,000 damages sustained through the alleged loss of profits and expenses resulting from plaintiff's negligence and want of skill in obtaining paving and other valuable contracts in Manaos in conformity with his agreement. As to the second cause of action, the answer substantially admits the pledge of the stock, the tender by plaintiff of the sum of $12,140, and the refusal of defendants to accept such tender and return to plaintiff his stock and the notes such pledge secured. It also admits the allegation contained in the complaint that said stock is not listed or dealt in on the exchange in the city or state of New York, and is not generally

known in said city or state. As counterclaims to the second alleged cause of action, the answer alleges: First, a sale of said stock at auction in the city of New York, after demand of payment of the indebtedness for which it was pledged and notice to plaintiff of such contemplated sale, for the net sum of $1,411.35, which amount was credited upon such indebtedness, after which there yet remained a balance of $8,581.84, with interest; and, second, the counterclaim of $50,000 alleged as against the first cause of action, and demands an affirmative judgment of $58,581.84, with interest. Plaintiff replied to these alleged counterclaims denying the material allegations thereof.

The learned justice presiding at the trial has found, as to the first cause of action, that on or about June 3, 1899, plaintiff entered into a contract with the state of Amazonas, United States of Brazil, to pave a street in the city of Manaos known as "Rua dos Remedios," with asphalt paving blocks, said contract having been made pursuant to an agreement between the plaintiff and defendants, as partners, by the provisions of which they "were to share equally the net profits of the defendants under such contract, after first deducting from the receipts thereunder, not only all expenses and disbursements connected with the work, but also certain additional specified expenses and disbursements to be made in connection therewith"; that such contract was subsequently extended so as to include an additional street known as "Rua Marquez de Santa Cruz"; that under such contract said streets were paved, and the costs, expenses, and disbursements thereof paid by defendants, who received therefor certain money and securities from said state, and that a final settlement of the obligations of said state therefor had been made; and, as a conclusion of law, "that plaintiff is entitled to an accounting with the defendants." As to the second cause of action, that on July 12, 1898, the plaintiff pledged to the defendants 2,359 shares of the capital stock of the Manaos Railway Company, of the par value of $100 each, for the payment of his note to them of 56 contos of reis, in currency of the United States of Brazil, payable at the rate of exchange of 7½d. (English money), per milreis, with interest at the rate of 6 per centum per annum; that subsequently the plaintiff increased his indebtedness to the amount of $1,610 additional, and withdrew 750 of said shares, leaving 1,609 shares pledged for the payment of his total indebtedness to defendants; that these shares were, on September 25, 1901, after a previous demand of payment of such indebtedness and due notice to the plaintiff of their intention so to do, sold by the defendants at public auction in the city of New York, and the defendants became the actual purchasers thereof; that defendants bid for and purchased said shares at said sale under the name of a person in their employ, for the purpose of concealing from the plaintiff the fact that they were the purchasers, and that they did conceal such fact from him until the trial of this action; that in February, 1902, the defendants sold and delivered said shares to the state of Amazonas for 25 per cent. of their par value, receiving therefor the bonds of said state of the par value, in United States currency, of $40,225; "that the price obtained by the defendants from said state of Amazonas

for the said shares was fair, and they are worth no more now"; that before the commencement of the action the plaintiff tendered to defendants the amount of his total indebtedness, viz., the sum of $12,-140, and demanded of them the return to him of said shares; that the defendants refused to receive the money so tendered or to return said shares; and, as conclusions of law, that the purchase of said shares was voidable, and the plaintiff was entitled to have it avoided; that, unless defendants delivered to the plaintiff the said shares and accepted the said tender of $12,140, they must be charged with the sum of $40,225 therefor, with interest thereon from the time of the sale thereof by them to the state of Amazonas, to be offset against the said indebtedness of plaintiff to defendants.

An interlocutory judgment was thereafter entered, directing an accounting under the first cause of action, and a referee appointed to take proof of and state such account. The referee found and stated an account between the parties, by which he found that the defendants were entitled to a credit of $22,758.80, which represented money paid out by them in and about said paving contracts for which they had not been reimbursed, and that they were chargeable with Amazonas state gold bonds of the par value in United States money of $56,395.60 as of the date of January 1, 1903, when they received them. He then finds:

"Sixth. That the Amazonas state gold bonds, above referred to, are payable in thirty (30) equal yearly installments beginning on the 1st day of July, 1902, and bear interest at the rate of 5 per cent. per annum, payable semiannually on the 1st day of January and July in each year; and that all of the installments of principal and interest which have become due have been paid, but from the evidence offered before me it appears that these bonds are not now readily salable in this market. Until the said bonds are sold or redeemed it is impossible to determine whether there are any profits in the contract specified in the first finding of the court herein, above the cost of executing the same.

"Seventh. That, from whatever sum there may be realized from these Amazonas state gold bonds now in defendants' hands, there should be paid to the defendants the sum of $22,758.80 and interest thereon from August 18, 1902, being the balance found by me to be due them in the fifth finding of fact. The balance of the proceeds thereafter remaining represents the profits, and must be divided equally between the plaintiff and the defendants."

Both sides filed objections to the referee's report, which were overruled, and the report confirmed. The learned trial justice thereupon made additional findings, in the following language:

"(1) That the state of the account on the first cause of action is that the defendants have received and hold 11,580 gold bonds of the state of Amazonas for the joint account of themselves and the plaintiff to be divided equally after the payment of a balance of expenses paid by them of $22,758.80, with interest from March 18, 1902; and that the par and actual value of the said bonds is $56,394.60, but that there is at the present no adequate or favorable market for them, and they cannot be turned at present into their true value in money.

"(2) That it is impossible for the defendants to restore to the plaintiff the securities which they held and sold as collateral to his notes, or their equivalent in kind, as they transferred the same to the state of Amazonas, with all of the same kind, and they are destroyed or irrevocably impounded. And, as conclusion of law, it is found that the plaintiff is entitled to judgment against the defendants for the amount found to be the value of the plaintiff's said securities in the first findings, less the amount due on his said notes, and

also less his share or half of the aforesaid expenses, viz., for the sum of $21,-274; and also that one-half of the said gold bonds be delivered to him by the defendants or else, and in default thereof, that he recover of them the value thereof, viz., $28,197.30."

Judgment was entered accordingly.

The magnitude of this record, and the many questions presented for our consideration, have made it necessary to devote a large amount of time to making ourselves conversant with its details, that the case might receive that degree of careful and patient consideration which the issues involved and questions presented merit. We have eliminated from our consideration the changes made in the referee's report and final decision and judgment by the stipulation of the parties to correct (as they say) "certain manifest clerical errors, omissions, etc., not affecting the issues or substantial rights of the parties," as the conclusions we have reached would not be affected by such changes, and limited the expression of our views to a few of the many questions presented, which may be regarded as the crucial questions and which dispose of this appeal.

We are unable to find any evidence to sustain the final finding of fact, that the "actual value" of the gold bonds of the state of Amazonas, with which the defendants are charged, is $56,394.60, and believe it is in conflict with the evidence in the case given upon that subject. It conflicts with the findings of the referee, which were confirmed by the court, that their actual value could not be ascertained. There is no exception to this finding of the referee by the plaintiff. When the case went to the referee the court had not reached a conclusion as to the actual value of these bonds. That question was left as one to be litigated before him, and it was there litigated, with the result that the referee found and decided as already quoted. The respondent seeks to sustain this finding by the rule applicable to cases of conversion; but that rule has no application to the case at bar, which is an action in equity. The defendants are rightly in possession of the bonds and have never converted them. There is no presumption as to the value of the obligations of a foreign state, and the court cannot take judicial notice of its solvency. It is necessary to establish such value in a case of this character, when it is to form the basis of a money judgment, by evidence. It was established before the referee that the value of the bonds was very problematical; that they had no market or cash value, and wherever there had been dealings in them they were based upon a fraction of their par value; or, in other words, that their actual value was, at the greatest, much less than their par value.

The learned referee was in error in surcharging the defendants' account with $9,186.56 as the actual value of the 38 contos in Amazonas 7 per cent. currency bonds, the equivalent of which in American money was that amount, which had been delivered by the defendants as a claimed necessary expense of the paving contract, because of which they asked a reduction of their value from the value of the bonds which they were to be charged with, but which delivery, as against the plaintiff, the referee properly held they were not entitled to make and did not furnish a basis for the credit asked for.

Instead of surcharging the account with a value, which his findings and decision show was not known and was incapable of ascertainment, and in the face of the uncontradicted evidence that the bonds so delivered had been practically repudiated, and had no value except by exchange into gold bonds at three-fifths of their par value, he should have charged the defendants with the bonds, the effect of which would have been to increase the 11,580 in par value of the Amazonas gold bonds in the defendants' hands with which they were otherwise charged, by the exchangeable equivalent of the bonds so delivered, in gold bonds, at the rate established for such exchange.

The appellants' contention that it was error for the trial court, upon the accounting for profits of the joint venture in the Manaos paving contract, set forth in the first cause of action, to award the plaintiff a recovery of one-half of the Amazonas gold bonds in the hands of the defendants as the result of the venture, upon the payment of one-half of the money advanced by them under their contract, for which they had not been reimbursed, must be sustained. The legal relation existing between the parties was found by the trial court to be that of partners under an agreement by which the defendants were to finance the venture, perform the contract, and the net profits (after deducting all expenses and disbursements) were to be divided equally. The defendants had, under this contract, advanced $22,758.80 in the necessities of the business, which had not been repaid them, and to the payment of which, in cash or its equivalent, they were entitled before the plaintiff was entitled to anything. Before it could be ascertained whether there were any profits to divide, the gold bonds, held as the result of the venture, must necessarily be converted into money by a sale, if a conclusion was to be reached before their redemption and payment, and from the proceeds of such sale the defendants were entitled to the money so advanced. Then, and not until then, could the amount of defendants' indebtedness to the plaintiff be determined. The plaintiff was not entitled to a money judgment against the defendants under his first alleged cause of action until a surplus of profits was disclosed. Through a receivership or some other form of liquidation this result might be accomplished, but the whole of defendants' advancement must be repaid to them before there can be any distribution of profits. This does not work a hardship to the plaintiff, or in any manner change or lessen his legal rights under his contract. The deficit of $22,758.80 represents money actually paid out and advanced by defendants, in conformity with their agreement with the plaintiff, which was to be repaid them before the plaintiff was entitled to receive any portion of the avails of such paving. If the defendants are unwilling to voluntarily risk a sale of the bonds at the present time, the plaintiff is entitled to a decree requiring their sale, the consequent liquidation of defendants' advancement from the avails thereof, and equal distribution on an adjustment before the maturity of the bonds.

We think the learned trial court erred in awarding, under the second alleged cause of action, an absolute money charge of $40,225 against the defendants, unless they delivered to the plaintiff the shares of railroad stock he had pledged to them. It cannot stand as a judgment for the conversion of the bonds, for there was no conversion. The de-

fendants were rightfully in possession of plaintiff's railroad stock, pledged to them as collateral, and, when he defaulted in the payment of his indebtedness, the defendants were entitled to sell it. Their proceedings in doing this were proper and valid, except that upon the sale they became the purchasers under circumstances which made such sale voidable. Four months later they exchanged the railroad stock for bonds of a par value in American money of $40,225. The price obtained, as the court found, was fair, and the shares of stock had no greater value at the time of the trial. This was in effect the changing of the plaintiff's property into other property of the same value, in which plaintiff's rights remained as in the property pledged.

The second cause of action is based upon the theory that, having tendered defendants the amount of his indebtedness, plaintiff was entitled to have his 1,609 shares of railroad stock returned to him, and that was the demand he alleges he made at the time of such tender. He alleges that such stock was not listed or dealt in on the Exchange in the city or state of New York, and had little or no market value; and he pleads that, if compelled to bring an action at law to recover damages, "it would be difficult, if not impossible, to properly ascertain the exact measure of damages for the loss of said stock." The Amazonas bonds, for which defendants exchanged the stock, were not mentioned in the complaint. The title to these bonds came to the defendants, and was never in plaintiff. He is not shown to have demanded them of defendants, and claims that he did not know of the exchange. These being the uncontroverted facts, it follows that there is no cause of action established for the conversion of the bonds, which never belonged to plaintiff, were never demanded by him, his complaint does not allege such cause of action, and there is no evidence or finding of their conversion.

It is equally apparent that a judgment based on a cause of action for the conversion of the railroad stock would not be sustained, for no such cause of action is pleaded, no such relief was demanded, and the complaint alleges that it is impossible to ascertain the value of such stock as the basis of seeking a judgment in equity. The defendants, being called upon in equity to account for the Amazonas bonds into which the stock had been changed, should have been required to accept the tendered payment of plaintiff's indebtedness to them, and to deliver to him the bonds in their possession, received in exchange for his stock, which it is found possessed the same value. Even if the plaintiff was entitled to a money judgment under this alleged cause of action, upon the facts proven and found, it was error to base it upon the par value of the bonds—$40,225 American money—in view of the fact that the only evidence upon which value could be predicated was that of sales made at from 50 to 60 per cent. of such par value. The plaintiff was not entitled to a money judgment against defendants under the second cause of action, and the additional money judgment in case defendants should fail to deliver to plaintiff one-half of the bonds involved in the first cause of action cannot be corrected upon this appeal.

The judgment must therefore be reversed, and a new trial granted, costs to abide the event. All concur.